UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RLLW, INC., a Nevada corporation, )<br><br>Plaintiff, )<br><br>v. )<br><br>AMERICAN FEDERAL, INC. d/b/a AMBANC, )<br>a Missouri corporation, )<br><br>Serve: Michael Maurer, President, or any )<br>officer, director or managing agent )<br>125 North Main Street )<br>St. Charles, Missouri 63301 )<br><br>and )<br><br>MICHAEL P. MAURER, )<br><br>Serve: 125 North Main Street )<br>St. Charles, Missouri 63301 )<br><br>and )<br><br>JAMES FRANCE, )<br><br>Serve: 125 North Main Street )<br>St. Charles, Missouri 63301 )<br>)<br>Defendants. ) | Cause No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW Plaintiff, RLLW, Inc., and for its Complaint against Defendants,

American Federal, Inc. d/b/a AmBanc ("AmBanc"), Michael Maurer, and James France, states

as follows:

1.     Plaintiff, RLLW, Inc. ("RLLW"), is a Nevada corporation with its principal place

of business located in Las Vegas, Nevada.  RLLW's primary business is operation of a number

of Pizza Hut restaurants throughout southern California.

2.      Defendant, American Federal, Inc. d/b/a AmBanc ("AmBanc"), is Missouri corporation with its principal place of business located in St. Charles, Missouri.

3.      Defendant, Michael P. Maurer ("Maurer"), is an individual who is a citizen of the State of Missouri and resides within the Eastern District of Missouri.  Maurer is the President of AmBanc and also has an ownership interest therein.

4.      Defendant, James France ("France"), is an individual who is a citizen of the State of Missouri and resides within the Eastern District of Missouri.  France is the Vice President of AmBanc and also has an ownership interest therein.

5.      Jurisdiction is appropriate pursuant to 28 U.S.C. § 1331(a) in that this action is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

6.      Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(a).

7.      In or about July 2003, AmBanc approached RLLW with a proposal to provide a loan and financing to RLLW in the maximum principal amount of Eighteen Million Dollars ($18,000,000.00).

8.      AmBanc, acting primarily through its Vice President, James France, represented to RLLW, acting primarily through Jackie Robinson (President of RLLW) and Jay Martin (Chief Operating Officer of RLLW), that AmBanc was a nationwide direct lender that routinely funded large commercial loans, and had itself funded and closed numerous such loans in the past.

9.      AmBanc also represented to RLLW that AmBanc had previously funded large loans to other companies in the restaurant industry.

10.     AmBanc further represented to RLLW that AmBanc had a large amount of money available for funding loans and had the financial ability and wherewithal to fund the loan to RLLW.

11.     AmBanc made these and other representations to RLLW on several occasions in July and early August 2003.

12.     AmBanc provided RLLW with a Conditional Commitment Notification, dated July 30, 2003, stating that AmBanc had "determined that you are qualified to borrow funds on the basis of the information you have provided" and that "[b]ased on current in-house information, you qualify for a loan amount of $18,000,000.00. A true and accurate copy of this document is attached as Exhibit 1 and incorporated by reference.

13.     In reliance on all such representations made by AmBanc, RLLW signed the Conditional Commitment that was proposed and prepared by AmBanc. A true and accurate copy of the Conditional Commitment is attached hereto as Exhibit 2.

14.     In addition, AmBanc repeatedly represented that it could and would fund the loan quickly, knowing that this was very important to RLLW, and often told RLLW that funding would be complete within a matter of weeks.

15.     In further reliance on the representations made by AmBanc, RLLW paid AmBanc a $90,000 deposit that AmBanc requested for its services.

16.     Despite repeated promises that the funding for the loan by AmBanc to RLLW was forthcoming and that the deal was done, AmBanc never funded, or otherwise provided, a loan to RLLW.

17.     On or about January 2, 2004, RLLW terminated the Conditional Commitment and demanded the return of its $90,000 deposit. Despite the fact that the Conditional Commitment clearly states that such deposit is refundable, AmBanc has refused to return the money to RLLW.

## COUNT I – BREACH OF CONTRACT

18.     RLLW reasserts and incorporates herein by reference the averments in paragraphs 1 through 17.

19.     AmBanc required, and RLLW paid AmBanc, a $90,000 deposit which was to be refunded by AmBanc to RLLW, unless the $18 million loan was funded, in which case it would be used as a credit against any fees or commissions owed by RLLW at closing.

20.     To the extent that the Conditional Commitment is a valid and binding instrument, RLLW performed its obligations under the Conditional Commitment and has complied with all conditions precedent to maintaining a suit thereunder.

21.     AmBanc breached the Conditional Commitment when it failed to fund a $18 million loan to RLLW.

22.     AmBanc also breached the Conditional Commitment in failing to refund the $90,000 deposit to RLLW.

23.     RLLW has been without the use of such funds since payment to AmBanc in August 2003 and is entitled to prejudgment interest thereupon.

WHEREFORE, RLLW, Inc., respectfully prays that the Court enter judgment in its favor and against American Federal, Inc. on Count I and thereupon award RLLW damages as are fair and reasonable and in excess of $90,000, plus appropriate interest, and further award RLLW its costs, expenses, attorneys' fees, and such other and further relief as the Court deems just and proper.

### COUNT II – DECLARATORY JUDGMENT

24.     RLLW reasserts and incorporates herein by reference the averments in paragraphs 1 through 17.

25.     As stated, RLLW has terminated the Conditional Commitment and demanded the return of the refundable deposit.

26.     To date, AmBanc has refused to return any portion of the $90,000 deposit to RLLW.

-4-

27.     An actual case and controversy exists between RLLW and AmBanc as to whether AmBanc is entitled to retain any portion of the $90,000 deposit and whether, as RLLW maintains, it is entitled to a full refund of all such amounts.

28.     RLLW has suffered, and is suffering, injury through AmBanc's retention of the deposit.

29.     RLLW is entitled to a declaration of rights from this Court that it is entitled to the immediate and full refund of the $90,000 deposit paid to AmBanc.

WHEREFORE, RLLW, Inc. respectfully prays that the Court enter judgment in its favor and against American Federal, Inc. on Count II and thereupon award RLLW damages as are fair and reasonable and in excess of $90,000, plus appropriate interest, and further award RLLW its costs, expenses, attorneys' fees, and such other and further relief as the Court deems just and proper.

## COUNT III – FRAUD (AMBANC)

30.     RLLW reasserts and incorporates herein by reference the averments in paragraphs 1 through 17.

31.     As set forth previously herein, AmBanc , acting primarily through France, made specific and affirmative representations and statements to RLLW, prior to the time that RLLW signed the Conditional Commitment and paid the deposit, that were designed and intended by AmBanc to induce RLLW to enter into the Conditional Commitment, including that RLLW had already qualified for the loan and that AmBanc was prepared to fund the loan.

32.     AmBanc, acting through France, also made specific and affirmative representations and statements to RLLW, including to Robinson and Martin, after the time that RLLW signed the Conditional Commitment, including those that funding for the AmBanc loan to RLLW was imminent.

33.     AmBanc represented to RLLW that it was a nationwide direct lender, that it had a substantial amount of money to loan to companies such as RLLW, that it had made other similar loans to restaurant companies, that it had the financial ability and wherewithal to make the loan, and that it had funded and closed numerous other large deals in the past.

34.     In response to inquiries by RLLW, AmBanc gave RLLW false and misleading information concerning prior loans that AmBanc claimed to have funded and closed when, in fact, AmBanc had not funded and/or closed such deals.

35.     In response to inquires by RLLW, AmBanc also gave RLLW false and misleading information concerning the source of funding for the $18 million loan.

36.     AmBanc also made other false and misleading statements designed to induce RLLW to continue to deal with AmBanc , including that AmBanc had relationships and close contacts with other potential lenders.

37.     All such statements and representations, both those designed to induce RLLW to enter into the Conditional Commitment and pay the deposit and those designed thereafter to make RLLW believe that AmBanc would fund the loan and continue to deal with AmBanc , were false.

38.     In particular, RLLW has recently learned that AmBanc has never served as a direct lender of money; has never funded a loan or otherwise lent any of its own funds toward any significant commercial loan; that the loans AmBanc claimed to have funded and closed, in fact, were not funded by AmBanc at all and several apparently never even closed.

39.     RLLW has also recently learned that AmBanc did not have the financial resources to fund any loan to RLLW, let alone one in the amount of $18 million.

40.     At the time that all such representations and statements were made by AmBanc , they were false, and/or were made with disregard as to the truth or falsity thereof.

41.     AmBanc made such representations and statements with knowledge of their falsity and/or in reckless disregard for the truth thereof.

42.     AmBanc made such representations and statements for the purpose of deceiving RLLW and inducing RLLW to sign the Conditional Commitment and, thereafter, continuing to work with AmBanc thereafter.

43.     RLLW relied on AmBanc's statements and representations to its detriment in signing the Conditional Commitment and thereafter giving AmBanc over 5 months to try and fulfill its representations and statements.

44.     At the time the representations were made to RLLW, AmBAnc had no intention of ever delivering any financing to RLLW and was making the representations only to receive the substantial deposit, which AmBanc in turn had no intent of ever refunding to RLLW.

45.     RLLW has recently learned that AmBanc has engaged in a pattern and course of conduct designed to induce companies, and particularly restaurant companies, to pay AmBanc substantial up-front deposits on the promise of AmBanc delivering and/or funding a multi-million loan.  To the best of RLLW's information and belief, AmBanc has never delivered on its promises and commitments and routinely refuses to refund deposits.  This pattern and course of is designed to defraud companies such as RLLW.

46.     As a direct result of such reliance, RLLW has suffered direct injury through the payment of $90,000 to AmBanc , through being deprived of the use of the loan proceeds for the balance of 2003, and through incurring other losses in an amount to be proven at trial.

47.     AmBanc's conduct was malicious and outrageous and done with the intent to injure RLLW and in a manner that reflects an evil motive and reckless indifference of RLLW's rights so as to make the award of punitive damages against AmBanc appropriate.

48.     Further, the pervasive nature of AmBanc's fraudulent conduct justifies that all attorneys' fees incurred by RLLW in dealing with AmBanc and bringing this lawsuit be imposed against AmBanc.

WHEREFORE, RLLW, Inc. respectfully prays that the Court enter judgment in its favor and against American Federal, Inc. on Count III and thereupon award RLLW actual and punitive damages as are fair and reasonable and in excess of $75,000, and further award RLLW its attorneys' fees, costs, expenses, and such other and further relief as the Court deems just and proper.

## COUNT IV – FRAUD (MAURER AND FRANCE)

49.     RLLW reasserts and incorporates herein by reference the averments in paragraphs 1 through 17.

50.     France and Maurer have a direct ownership and financial interest in AmBanc, through their overlapping roles as owners, officers, directors, and employees of AmBanc.

51.     Upon information and belief, France and Maurer use, or planned to use, their personal assets for AmBanc's business purposes, including, but not limited to, as a source of potential funds in the event that AmBanc made a loan to RLLW.

52.     Upon information and belief, Maurer and France exercise complete control over the day-to-day operations, finances, and business practices of AmBanc through their respective and overlapping roles as owners, officers, directors, and employees of AmBanc .

53.     Upon information and belief, AmBanc is undercapitalized in that it does not have assets or any assets it might have are insufficient to meet the obligations that France and Maurer purport to make in AmBanc's name, including the funding of any commercial loans.

54.     As a result of such actions as herein alleged, Maurer and France used AmBanc, both with respect to RLLW and otherwise, to commit a fraud.

55.     As set forth previously herein, France and/or Maurer made specific and affirmative representations and statements to RLLW, prior to the time that RLLW signed the Conditional Commitment, that were designed and intended by France and Maurer to induce RLLW to enter into the Conditional Commitment and pay the deposit.

56.     France and/or Maurer also made specific and affirmative representations and statements to RLLW, primarily to Robinson and Martin, after the time that RLLW signed the Conditional Commitment, including those made that funding for the AmBanc loan to RLLW was imminent.

57.     France and/or Maurer represented to RLLW that AmBanc was a nationwide direct lender, that it had a substantial amount of money to loan to companies such as RLLW, that it had made other similar loans to restaurant companies, that it had the financial ability and wherewithal to make the loan, and that it had funded and closed numerous other large deals in the past.

58.     In response to inquiries by RLLW, France and/or Maurer gave RLLW false and misleading information concerning prior loans that they claimed AmBanc had funded and closed when, in fact, AmBanc had not funded and/or closed such deals.

59.     France and/or Maurer also made other false and misleading statements designed to induce RLLW to continue to deal with AmBanc, including that AmBanc had relationships and close contacts with other potential lenders, which were false.

60.     All such statements and representations, both those designed to induce RLLW to enter into the Conditional Commitment and pay the deposit and those designed thereafter to make RLLW believe that AmBanc would fund the loan and continue to deal with AmBanc, were false.

61.     In particular, RLLW has recently learned that AmBanc has never served as a direct lender of money; has never funded a loan or otherwise lent any of its own funds toward any significant commercial loan; that the loans France and/or Maurer claimed AmBanc funded and closed, in fact, were not funded by AmBanc at all and several of those loans apparently never even closed.

62.     Upon information and belief, AmBanc did not have the financial ability to fund any portion of the loan to RLLW.  While AmBanc, France, and Maurer never had any intent to provide a loan to RLLW, France and Maurer would have used personal funds in the event that a loan was ever made by AmBanc to RLLW.

63.     At the time that all such representations and statements were made by France and Maurer, they were false, and/or were made with disregard as to the truth or falsity thereof.

64.     France and Maurer made such representations and statements with knowledge of their falsity and/or in reckless disregard for the truth thereof.

65.     France and Maurer made such representations and statements for the purpose of deceiving RLLW and inducing RLLW to sign the Conditional Commitment and, thereafter, continuing to work with AmBanc thereafter.

66.     RLLW relied on France's and/or Maurer's statements and representations to its detriment in signing the Conditional Commitment and thereafter giving AmBanc over 5 months to fulfill its representations and statements.

67.     RLLW has recently learned that France and Maurer use AmBanc and its related and affiliated entities to engage in a pattern and course of conduct designed to induce companies, and particularly restaurant companies, to pay AmBanc substantial up-front deposits on the promise of AmBanc delivering and/or funding a multi-million loan.  To the best of RLLW's information and belief, France, Maurer and AmBanc have never delivered on their promises and

commitments and routinely refuses to refund deposits. This pattern and course of is designed to defraud companies such as RLLW.

68.    As a direct result of such reliance, RLLW has suffered direct injury through the payment of $90,000 to AmBanc , through being deprived of the use of the loan proceeds for the balance of 2003, and through incurring other losses in an amount to be proven at trial.

69.    France's and Maurer's conduct, and their use of a corporate shell company for their own personal gain, was malicious and outrageous and done with the intent to injure RLLW and in a manner that reflects an evil motive and reckless indifference of RLLW's rights so as to make the award of punitive damages against France and Maurer appropriate.

70.    Further, the pervasive nature of France's and Maurer's fraudulent conduct justifies that all attorneys' fees incurred by RLLW in dealing with AmBanc and bringing this lawsuit be imposed against France and Maurer.

WHEREFORE, RLLW, Inc. respectfully prays that the Court enter judgment in its favor and against Michael Maurer and James France on Count IV and thereupon award RLLW actual and punitive damages as are fair and reasonable and in excess of $75,000, and further award RLLW its attorneys' fees, costs, expenses, and such other and further relief as the Court deems just and proper.

### COUNT V – VIOLATION OF MISSOURI LOAN BROKER ACT
### MO. REV. STAT. § 367.300 ET SEQ.)
### (AMBANC, MAURER, AND FRANCE)

71.    RLLW reasserts and incorporates herein by reference the averments in paragraphs 1 through 17 and 30 through 70.

72.    Upon information and belief, AmBanc has no assets and has never funded a significant commercial loan to any entity and otherwise had no ability to fund any portion of the $18 million loan it was to have made to RLLW.

73.     In its dealings with RLLW, AmBanc was (at most) acting as a loan broker as such term is defined by Mo. Rev. Stat. § 367.300, in that AmBanc contends that it is a mortgage lender and admits that it is not licensed by or subject to regulation or supervision of any agency of the Missouri or United States.

74.     AmBanc required that RLLW pay an advance fee to AmBanc through the payment of the $90,000 deposit, which was paid by RLLW prior to closing on any loan, and which AmBanc knowingly charged and received from RLLW.

75.     Upon RLLW's signing of the Conditional Commitment and payment of the $90,000 fee, AmBanc, Maurer and France allegedly attempted to arrange for, or to fund, a loan of money to RLLW; allegedly assisted RLLW in obtaining, or attempting to obtain, a loan; allegedly solicited lenders on RLLW's behalf; and/or held itself out as a loan broker to others.

76.     AmBanc's actions in charging and collecting a $90,000 advance fee from RLLW violate Mo. Rev. Stat. § 367.305.

77.     Maurer and France, through their positions as officers, directors and owners of AmBanc, are liable for all acts of AmBanc, including any and all other agents or employees thereof, pursuant to Mo. Rev. Stat. § 367.307.

78.     As a result of the payment of the $90,000 advance fee required and received by AmBanc, RLLW has been damaged.

79.     The actions of AmBanc, Maurer, and France were malicious and outrageous and done with the intent to injure RLLW and in a manner that reflects an evil motive and reckless indifference of RLLW's rights so as to make the award of punitive damages against each Defendant appropriate.

80.    As a result of such actions, RLLW has incurred, is incurring, and will continue to incur attorneys' fees, costs, and expenses in protecting its rights and maintaining this action and has the right to recover such items by law.

WHEREFORE, RLLW, Inc. respectfully prays that the Court enter judgment in its favor and against American Federal, Inc., Michael P. Maurer, and James France, on Count V and thereupon award RLLW actual and punitive damages as are fair and reasonable and in excess of $90,000, and further award RLLW its attorneys' fees, costs, expenses, and such other and further relief as the Court deems just and proper.

OF COUNSEL:
ARMSTRONG TEASDALE LLP

Mark D. Sophir                    #4422
Michael H. Kauffman               #106290
One Metropolitan Square, Suite 2600
St. Louis, Missouri 63102-2740
(314) 621-5070
(314) 621-5065 (facsimile)


ATTORNEYS FOR PLAINTIFF RLLW, INC.